2023 IL App (2d) 220035-U
Nos. 2-22-0035 & 2-22-0285 cons.
Order filed April 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF SAMUEL F. HUTCHINSON, Deceased. | ) ) ) ) ) | Appeal from the Circuit Court of McHenry County. Nos. 19 PR 98, 19 LM 370, and 19 LM 372 |
| (Brian P. Hutchinson, Executor of the Estate of Samuel F. Hutchinson, and Co-Successor Trustee of the Samuel F. Hutchinson Revocable Trust, Petitioner-Appellant v. Tserenkhand Renchindorj, a/k/a Tserenkhand Hutchinson, Respondent-Appellee). | ) ) ) ) ) ) ) ) | Honorable Michael J. Chmiel Judge, Presiding. |

JUSTICE HUTCHINSON[1] delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's finding that petitioner was not entitled to replevin of personal property was not against the manifest weight of the evidence. The trial court erred in not holding an evidentiary hearing to determine if petitioner was entitled to an award for use and occupation. The trial court's orders staying the litigation during the pendency of this appeal and denying petitioner's motion to reconsider the stay were not abuses of discretion.

---

[1] Justice Susan Fayette Hutchinson has no familial or professional relationship with any of the parties or other individuals mentioned in this disposition.

¶ 2    At issue in this consolidated appeal is whether the trial court erred when it (1) denied petitioner replevin of certain personal property; (2) denied petitioner an award for use and occupation; (3) stayed the litigation as to all other matters while those issues were on appeal; and (4) denied petitioner's motion to reconsider the stay. The trial court's findings regarding the personal property were not against the manifest weight of the evidence. The denial of the use and occupation award, without an evidentiary hearing, was error. The trial court's *sua sponte* stay of the litigation was not an abuse of discretion. We affirm in part, vacate the portion of the forcible entry and detainer judgment denying use and occupation, and remand for further proceedings.

¶ 3                            I.  BACKGROUND

¶ 4    This matter involves several issues that were raised in two separate appeals. Originally, petitioner, Brian P. Hutchinson, opened a probate case (No. 19 PR 98) in the circuit court of McHenry County after the death of his father, Samuel F. Hutchinson.  Brian was appointed executor of the estate. Brian was also appointed co-successor trustee, along with his one sibling, Audra Peterson, of three trusts that were created by their parents. These include: the Samuel F. Hutchinson Revocable Trust, the Judith A. Hutchinson Revocable Trust, and the Hutchinson Family Trust (collectively "the trusts"). Judith, who was the mother of Brian and Audra, predeceased Samuel. At the time of Samuel's death on February 26, 2019, he lived with his second wife, Tserenkhand Renchindorj (a/k/a Hannah Hutchinson), in a house in Spring Grove commonly known as 7814 Pillow Hill Road (the residence). The trusts owned the real property. Hannah remained living there and using the personal property within the home after Samuel's death.

¶ 5    On July 8 and 9, 2019, Brian filed several petitions in the probate case: a citation to discover assets, a petition for leave to allow citation to discover assets, and a petition for leave to recover assets.

¶ 6    On July 15, 2019, Brian filed complaints generating two additional cases in the circuit court of McHenry County. One, a replevin action (No. 19 LM 370) sought certain personal property from Hannah. The property listed in the verified amended complaint included specifically: 12 pieces of jewelry, 21 firearms, six tractors, a 1938 International Harvester truck, a 1965 Airstream trailer, a 1998 Mercedes-Benz, and a 2012 Land Rover. It also demanded generally: "extensive amount of art up to $200,000; extensive collection of jewelry $250,000; extensive miscellaneous tools $25,000; extensive library $15,000; and home furnishings $50,000." The other complaint, a forcible entry and detainer action (No. 19 LM 372), sought possession of the residence—thereby evicting Hannah—and $14,000 in rent for the period of March 1, 2019, through June 30, 2019. Cases No. 19 LM 370 and No. 19 LM 372 were transferred and consolidated with the probate case.

¶ 7    On September 18, 2019, Hannah filed a petition to construe or reform the trust. The petition sought to establish Hannah as Samuel's "spouse" under the Samuel F. Hutchinson Revocable Trust.

¶ 8    On September 26, 2019, the trial court held a combined trial on the issues of replevin and forcible entry and detainer. Brian, Audra, and Hannah testified.

¶ 9    Of the property listed above, Brian testified that he obtained possession of the tractors. He retitled the International Harvester and the Mercedes-Benz into his name at the Wisconsin Department of Motor Vehicles. Brian made a demand for those vehicles, but Hannah had not given him either one. The Mercedez-Benz was titled to "Hutchinson Samuel F. or Hutchinson Tserenkhand" before Brian changed it. Brian did not retitle the Land Rover which was titled to "Hutchinson Samuel F. and Hutchinson Tserenkhand." Hannah remained in possession of the Land Rover. Brian had not found any title documents for the Airstream trailer.

¶ 10    Brian explained that the real property of the home included an outbuilding with a workshop area. The workshop had table saws, band saws, lathes, woodworking tools, and a large quantity of hand tools that were all owned by his father up until the time of his death. In the residence there was an office area adjacent to the main bedroom where Samuel kept documents, bills, notes, and paperwork. Brian demanded these items from Hannah, but she had not complied. Brian also demanded artwork, jewelry, home furnishings, and books which Brian said had belonged to Samuel, before his marriage to Hannah. None of these items were delivered to Brian.

¶ 11    On cross-examination, Brian testified that he never had a conversation with his father about Hannah living at the residence. He never had a verbal conversation with Hannah about her residing at that property. When Brian lived in the home for brief periods in 1988 and 1993, he did not pay rent, and neither of his parents ever paid rent to the trusts during their lifetimes. There were no leases entered into between Samuel, Judy, Hannah, or Brian, and the trusts. In the initial demand for possession, Brian did not ask for any rent money from Hannah. In the forcible entry and detainer complaint he demanded $14,000 for the time period of March through June 2019.

¶ 12    Brian knew the personal property belonged to his father because he witnessed his father accumulate it. Brian stated that there was a policy insuring some of the jewelry, and he believed his father paid the premiums from an individual bank account or possibly from a checking account held jointly with Hannah.

¶ 13    The vehicles were titled in Wisconsin. The Wisconsin Department of Motor Vehicles informed Brian that the Mercedes-Benz and the Land Rover had Samuel F. and/or Tserenkhand Hutchinson as titled owners. Brian changed the titled owner of the Mercedes-Benz and the International Harvester to his own name without Hannah's approval. The trusts were not listed as titled owners of any of the vehicles.

¶ 14    Brian listed numerous types of documents when he was asked to identify the exact items he was seeking to replevin. Brian testified further as follows:

"Q. [Respondent's Attorney]: So you've alleged a complaint seeking the return of specific items of property. I'm asking you now, please, identify the exact items that you are seeking to replevin.

A. Okay. I would like the title of the Airstream. I would like any possible copies, information in pertaining to the trust, any information possibly pertaining to the estate. I would like any financial records that were created from Chase Bank. I would like any financial records that were created from Merrill Lynch accounts. I would like any records that were created from Computershare with shares of McDonald's, Walmart, AT&T. I would like Putnam statements. I would like access to the documents that would be needed to execute my job in the proper fashion.

Q. And you just gave us a number of categories with the caveat [of] any possible copies. So is it fair to say right now as we sit here, you don't know exactly what's there?

A. You are correct."

* * *

"Q. So really by this action, you are seeking information; is that fair to say?

A. Absolutely."

¶ 15    Audra Peterson, the daughter of Samuel and Judith Hutchinson, testified that she is a successor co-trustee of the trusts. Audra described various personal property that she was familiar with as it was in her parents' home. This included jewelry, artwork, furnishings, décor, statues, and other miscellany. She testified that both of her parents owned these items up until her mother's

death, and that her father possessed the personal property after that. Audra stated that she would be able to identify everything she testified to if she were in the residence.

¶ 16     On cross examination, Audra testified that her relationship with her father deteriorated after he married Hannah. Audra visited the house approximately five times over the course of Samuel and Hannah's five-year marriage until her father's death. At the time of the trial, Audra had not been to the house since her father's death, seven months earlier, and she could not say what currently was in the home. To Audra's knowledge, the personal property was owned by the estate.

¶ 17     At the close of petitioner's case, Hannah moved for a directed verdict on the replevin complaint. Hannah argued that the ownership of the personal property had not been established. The trial court determined that possession of the handguns and the tractors was no longer in dispute. The trial court granted Hannah's motion with regard to the Mercedes-Benz and Land Rover because Hannah's name had appeared on the title of the Mercedez-Benz until Brian changed it, and her name was still on the title to the Land Rover. The trial court found that without a title, there was no evidence presented of who had a superior right to possession of the Airstream trailer, and it should remain on the property of the residence. The directed verdict did not include the International Harvester, or any other specific items of personal property.

¶ 18     Hannah testified that she received the replevin complaint and the schedule of property that Brian sought. She did not know whether all the jewelry listed was in the house. She did not know specifically what home furnishings the complaint referred to. Hannah never paid rent, nor entered into a lease to live at the home. She had full use of all the personal property in the home and the grounds of the real property during the entirety of the marriage. Hannah did not know who owned the personal property in the home that was the subject of the trial, but the items were in her possession. She had joint possession of all the property since her marriage to Samuel in 2014. At

one point the couple met with a realtor to discuss selling the residence. The couple also met with an estate planning attorney, but Samuel's estate plans were never altered during their marriage.

¶ 19    On cross examination, Hannah was asked whether the jewelry, artwork, tools, and furniture remained in the home. She confirmed Judith's wedding ring and Samuel's watch were in the home. Many other items she could not say for certain as it was unclear what specific items were being asked about. Hannah stated that she lived in the home with Samuel, and she believed everything in it belonged to both of them.

¶ 20    On October 15, 2020, Brian filed a motion for use and occupation of the residence seeking $90,000 from Hannah. The court had approved this motion after Hannah objected to Brian's testimony at the trial concerning the value of the residence and the fair market rental value.

¶ 21    On September 10, 2021, Hannah filed two claims against the estate. The first asserted that she was entitled to a spousal award of $20,000 from the estate (755 ILCS 5/15-1(a) (West 2020)), and the second asserted that she was entitled to $180,000 as the property's custodian (755 ILCS 5/18.1 (West 2020)).

¶ 22    On November 30, 2021, Brian sought leave to intervene and file a counterclaim against Hannah on behalf of his mother's trust. He sought to recover approximately $124,000, which he alleged should have been transferred from the Judith A. Hutchinson Trust to the Hutchinson Family Trust at the time of Judith's death but was not.

¶ 23    On December 22, 2021, the trial court entered six findings. *First,* the court found that judgment enter in favor of Hannah in the replevin action and that all personal property that had not been resolved by prior agreement or the directed verdict, should remain at the home and not be disposed of in any way. *Second*, in the forcible entry and detainer action, the court found that the trusts owned the real property in Spring Grove and had a right to evict Hannah; accordingly, she

was ordered to vacate the home by January 31, 2022. *Third*, the clerk would retain various exhibits from the trial and those exhibits would only be released on order of the court. *Fourth*, the court granted Hannah's motion to dismiss Brian's affirmative defenses to her statutory contribution claims. *Fifth*, the court denied Brian's motion for use and occupation. *Sixth*, the court granted Brian's motion to dismiss Hannah's petition to construe or reform the trust with prejudice.

¶ 24    On January 19, 2022, Brian appealed the denial of the replevin action and the denial of the motion for use and occupation, which generated appeal No. 2-22-0035. On January 20, 2022, Hannah filed a motion to reconsider the dismissal of her petition to construe or reform the trust and to stay enforcement of the order for possession of the residence.

¶ 25    On February 4, 2022, the trial court stayed enforcement of its eviction order until Hannah's motion to reconsider the construction of the trust could be briefed and ruled upon. On March 15, 2022, the date of the hearing on Hannah's motion to reconsider the construction of the trust, the trial court *sua sponte* stayed all pending litigation because of Brian's appeal of the replevin and use and occupation matters from the December 21, 2021, order. On July 7, 2022, the trial court denied Brian's motion to reconsider the stay and Brian appealed that order, which generated appeal No. 2-22-0285. We consolidated the appeals for this combined disposition.

¶ 26                                    II. ANALYSIS

¶ 27    As an initial matter, we have an independent duty to examine our jurisdiction. *West Bend Mut. Ins. Co. v. TRRS Corp.*, 2019 IL App (2d) 180934, ¶ 13. We determine we have jurisdiction to hear the appeal from the order denying replevin and denying an award of use and occupation pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016). The order denying Brian's right to replevin and to use and occupation was "entered in the administration of an estate *** or similar proceeding which finally determines a right or status of a party." *Id.*

Jurisdiction for the appeal arising from the litigation stay is likewise proper under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 17, 2017) which permits an interlocutory appeal from an order granting an injunction. "[A] stay of proceedings is indeed an injunction." *Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359, ¶ 52. Thus, we have jurisdiction over both matters.

¶ 28 We now turn to Brian's contention that the trial court's denial of his petition for replevin was error. Brian contends the order of the trial court is against the manifest weight of the evidence. A finding is against the manifest weight when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 29 A replevin action is initiated by filing "a verified complaint which describes the property to be replevied and states that the plaintiff in such action is the owner of the property so described, or that he *** is then lawfully entitled to possession thereof, and that the property is wrongfully detained by the defendant ***." 735 ILCS 5/19-104 (West 2018). Then, at the hearing the petitioner must establish "a *prima facie* case to a superior right to possession of the disputed property" and demonstrate "the probability that [he] will ultimately prevail on the underlying claim to possession." 735 ILCS 5/19-107 (West 2018).

¶ 30 In the verified amended complaint Brian contended that the property sought is a part of his father's estate and that he is entitled to possession of the personal property because of his position as executor of the estate. The verified complaint lists some specific items (International Harvester, Airstream trailer, Mercedes-Benz, Land Rover), but also groups different types of personal property together with no specificity (*e.g.* artwork, jewelry, furniture, tools, etc.).

¶ 31 At the trial, when Brian was asked to state the location of the items in the complaint, he was unable to do so. When Audra was asked to identify certain items and their locations, she was

also unable to do so. Hannah testified that Samuel gifted to her all the personal property in the home because they lived there together for five years of marriage, during which she had full access to and use of that property. Against this backdrop, the trial court found that Brian had failed to prove the estate was entitled to replevin for relief.

¶ 32 On appeal, Brian contends that all of the personal property at issue belonged to Samuel prior to the marriage, that Samuel retained sole possession, and that all personal property became a part of Samuel's estate. However, at the trial Brian repeatedly referenced that either the estate *or* the trust had superior right to possession, and he, as executor of the estate and co-successor trustee of the trusts, would determine which entity was the proper owner after he personally was awarded possession.

¶ 33 Brian failed to specifically identify the property he sought to replevin and so he failed to meaningfully "describe[]" (735 ILCS 5/19-104) the property he sought. Additionally, he failed to definitively state whether he was entitled to the property by virtue of his position as executor of the estate or co-successor trustee of the trust, and therefore failed to explain how he was "lawfully entitled to possession thereof" (*id*.). Moreover, as the trial court noted, Brian failed to prove that Hannah was unlawfully detaining the property. Hannah renounced Samuel's will, and there has not yet been a determination on that matter. As such, it is still possible that Hannah has rights to at least some of the personal property as a potential heir. After careful review of the record, we cannot hold that the trial court's order denying replevin was against the manifest weight of the evidence.

¶ 34 Brian next contends that the trial court erred when it found that Hannah did not need to start paying rent, and that she did not owe any back rent to the estate. We should review the trial court's finding to determine if it was against the manifest weight of the evidence. See *Kirk Patrick*

*v. Strosberg*, 385 Ill. App. 3d 119, 128 (2008). However, we have no evidence to consider since the trial court did not grant a hearing on the issue. Therefore, we find that the trial court abused its discretion by not allowing a hearing. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *REEF-PCG, LLC v. 747 Properties, LLC*, 2020 IL App (2d) 200193, ¶ 32 (quoting *Seymour v. Collins*, 2015 IL 118432, ¶ 41).

¶ 35    The trial court only relied on the *absence* of language in the trust about rent and the amount of rent when the it found that Hannah was not obligated to pay any money for her use and occupation of the residence. It found throughout the history of the trust that no one who had ever lived at the residence had paid rent. This included Samuel and Judith during their marriage, and then Samuel and Hannah during their marriage. These findings were articulated in the trial court's December 22, 2021, order that also disposed of the forcible entry and detainer issue.

¶ 36    The forcible entry and detainer issue and the motion for use and occupation are related but are not entirely the same. In each one Brian demands money from Hannah for living in the residence. The motion for use and occupation was generated after the trial because Hannah objected to Brian's testimony seeking an award for use and occupation during the eviction portion of the trial on the forcible entry and detainer action. The parties and the court then agreed that Brian would instead subsequently submit a written motion for use and occupation. Brian filed that motion on October 15, 2020, with two exhibits. One exhibit was an affidavit from Brian and the other exhibit was an affidavit from real estate agent Randy Schulenburg, who was retained for his opinion by Brian.

¶ 37    Hannah's reply to Brian's motion asserted that Brian was attempting to reopen the proofs, and that he should have submitted this argument and evidence at trial. Hannah requests that the

motion be denied, or alternatively, that she be given the opportunity for discovery, to retain and offer her own expert testimony, and participate in an evidentiary hearing regarding Brian's requested relief of $90,000. The trial court's only articulated reason for denying the motion for use and occupation without an evidentiary hearing was that no party had ever previously paid rent, and so Hannah was not obligated to pay rent. The record reflects that no consideration was given to Brian's exhibits, nor Hannah's reply. It denied Brian any award. We hold that in the absence of an evidentiary hearing, in which both parties are given the opportunity to submit evidence concerning any special agreement for rent and what a reasonable rental value would be, the trial court lacked sufficient evidence to make a determination. See *People ex rel. Dep't of Transp. v. Cook Dev. Co.*, 274 Ill. App. 3d 175, 180–81, (1995) (where lessee party did not contest reasonableness of the use and occupancy award, and additionally had a counterclaim which would allow it to be heard in due course, it was not erroneously denied an evidentiary hearing). Accordingly, the trial court erred in denying the motion for use and occupation. We vacate the denial of the award of use and occupation and remand for an evidentiary hearing.

¶ 38 We now turn to petitioner's final contention that the trial court erred when it *sua sponte* stayed the litigation pending our resolution of appeal No. 2-22-0035. We review this issue narrowly, as "[t]he scope of review in an interlocutory appeal from an order granting a motion to stay proceedings is limited to a determination as to whether the trial court abused its discretion in granting the stay." *Goodwin v. McHenry County Sheriff's Office Merit Commission*, 306 Ill. App. 3d 251, 257 (1999). Unless a reviewing court finds that discretion has been abused, an order granting a motion to stay the underlying proceedings will not be set aside. "A stay order seeks to preserve the status quo existing on the date of its entry and does not address in any way the merits of the underlying dispute." *Estate of Bass ex rel. Bass v. Katten*, 375 Ill. App. 3d 62, 67 (2007)

(citing *Kaden v. Pucinski*, 263 Ill. App. 3d 611, 615 (1994)). That is precisely what the trial court's *sua sponte* order sought to do.

¶ 39    In this case, the interlocutory relief sought by Brian is reversal of the trial court's *sua sponte* order staying the underlying proceedings during the pendency of the appeal. As this court's order will end the pendency of this appeal, any review of the trial court's order would be a nonevent. However, our review of the record reveals no less than six separate causes of action pending resolution in the estate case still pending in the trial court. In its March 16, 2022, order initiating the stay the trial court stated:

> "Considering the pendency and processing of the appeal, and with great respect for the appellate process, the Court finds that it should not address any of the various pending matters in this case, until further direction is received from the Appellate Court."

¶ 40    Given the interwoven nature of the actions remaining in the underlying proceedings, we can find no abuse of discretion with the trial court's order granting the stay.

¶ 41                                III. CONCLUSION

¶ 42    For the reasons stated, we determine that the trial court's denial of replevin was not against the manifest weight of the evidence. The trial court's denial of an award of use and occupation, in the absence of an evidentiary hearing, was an abuse of discretion. The decision to *sua sponte* stay the remaining proceedings pending our resolution of the appeal was not an abuse of discretion. We therefore affirm in part, vacate the order denying use and occupation, and remand to the circuit court of McHenry County case No. 2-22-0035. We affirm the entry of the stay in No. 2-22-0285. The stay is now dissolved, and this cause is remanded to the circuit court for further proceedings consistent with this disposition.

¶ 43    No. 2-22-0035, Affirmed in part, vacated, and remanded in part.

¶ 44    No. 2-22-0285, Affirmed; stay dissolved.