2024 IL App (2d) 230174
No. 2-23-0174
Opinion filed May 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF MARCELLIS STINNETTE, Deceased | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | No. 20-P-873 |
| (Zharvellis Holmes, Petitioner and Counterrespondent-Appellee v. Tafara Williams, Respondent and Counterpetitioner-Appellant). | ) ) ) ) ) | Honorable Patricia S. Fix, Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioner, Zharvellis Holmes, the mother of the decedent, Marcellis Stinnette Sr. (Marcellis Sr.), filed a petition for appointment as administrator of the estate of Marcellis Sr. Respondent, Tafara Williams, the mother of Marcellis Sr.'s son, Marcellis Stinnette Jr. (Marcellis Jr.), filed a counterpetition for appointment as administrator of that estate. Without conducting an evidentiary hearing, the trial court granted Holmes's petition and denied Williams's counterpetition. Williams appeals. We hold that the trial court erred by (1) ruling on the petitions for appointment as administrator before ruling on Williams's related petition to be appointed guardian of the estate of Marcellis Jr. and (2) failing to conduct an evidentiary hearing before ruling on the petitions for appointment as administrator. Therefore, we vacate the trial court's judgment and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3       On October 20, 2020, Marcellis Sr. was shot and killed by Officer Dante Salinas of the Waukegan Police Department. Salinas was charged in the circuit court of Lake County with second degree murder for Marcellis Sr.'s death. Williams was also charged in Lake County with aggravated fleeing or attempting to elude a peace officer, based on her driving the vehicle in which Marcellis Sr. was a passenger when he was shot.

¶ 4       Williams filed a federal civil rights lawsuit in the United States District Court for the Northern District of Illinois (District Court), arising out of the injuries she suffered when Salinas shot her as she drove the vehicle in which Marcellis Sr. was shot. See *Williams v. City of Waukegan*, No. 1:20-CV-04609 (N.D. Ill. Oct. 28, 2020). Holmes filed a wrongful death civil rights action in the District Court based on the shooting death of Marcellis Sr. See *Holmes v. City of Waukegan*, No. 1:20-CV-06437 (N.D. Ill. Oct. 29, 2020). Both federal actions have been stayed pending the outcome of the criminal case against Salinas.

¶ 5       On October 26, 2020, Holmes filed a petition for letters appointing her as administrator of Marcellis Sr.'s estate. The case was docketed as case No. 20-P-873. Holmes's petition noted that Marcellis Sr. died without a will. She also filed an affidavit of heirship, identifying as heirs (1) herself, (2) Marcellis Sr.'s siblings, and (3) Marcellis Jr., a "potential son" of Marcellis Sr. Holmes asked the trial court to consider her petition on an expedited basis.

¶ 6       The next day, October 27, 2020, the trial court entered an order appointing Holmes as administrator of Marcellis Sr.'s estate. The court also entered an order declaring as heirs (1) Holmes, (2) Marcellis Sr.'s siblings, (3) Marcellis Sr.'s unknown father, and (4) a "potential son," Marcellis Jr.

¶ 7     On October 29, 2020, Williams filed (1) a counterpetition for letters appointing her as administrator of Marcellis Sr.'s estate, (2) an emergency motion to vacate the October 27, 2020, order appointing Holmes as administrator, (3) an affidavit of heirship, identifying Marcellis Jr. as Marcellis Sr.'s son and sole heir, and (4) an emergency motion for an order directing the coroner to submit a DNA sample from Marcellis Sr. so that Williams could arrange for DNA testing to determine whether Marcellis Jr. was Marcellis Sr.'s son. Williams noted that she was the mother of Marcellis Jr.

¶ 8     Also, on October 29, 2020, Williams filed a petition to be appointed guardian of Marcellis Jr.'s estate. The case was docketed separately as case No. 20-P-885 and assigned to the same trial judge who presided over case No. 20-P-873.

¶ 9     On November 2, 2023, the trial court granted Williams's motion for a DNA sample from Marcellis Sr. On December 12, 2020, Williams filed a supplement to her emergency motion to vacate the October 27, 2020, order, asserting that a DNA test established with 99% certainty that Marcellis Jr. was Marcellis Sr.'s son. Attached to the supplement was a copy of the DNA testing results.

¶ 10    On April 19, 2021, Williams filed a motion for leave to file an amended counterpetition for letters of appointment. Williams's amended counterpetition asked that she or, alternatively, The Chicago Trust Company (Chicago Trust), be appointed as administrator. The trial court granted the motion for leave to file the amended counterpetition.

¶ 11    On April 27, 2023, the trial court conducted a hearing on two motions filed in case No. 20-P-885: a motion by Williams to stay the proceeding[1] and a motion by Holmes for leave to file an

_____

[1]The common law record does not show that Williams also filed a motion to stay in case

exhibit in that proceeding. The court addressed first the motion for a stay. Williams's counsel stated that Williams sought to stay the guardianship proceeding because the federal actions were stayed, and, thus, there was no urgency to proceed with the guardianship action. Counsel further contended that, because Williams was being prosecuted for her involvement in the October 2020 incident, she would need to assert her privilege against self-incrimination in the guardianship proceeding and thus would be "hampered in trying to present a case to [the] Court." Holmes's counsel, noting that Williams had not previously referenced her right against self-incrimination, suggested that the motion for a stay was merely a delay tactic.

¶ 12    The trial court asked if case No. 20-P-885 was "really the issue here today." Williams's counsel said yes because the motion for a stay was filed in case No. 20-P-885, which had not been consolidated with case No. 20-P-873. The court then determined that Williams's pending criminal case was not a basis for staying case No. 20-P-885. However, the court said it would "think about" whether it should stay case No. 20-P-885 because the federal civil rights action was stayed. The court added that it was considering the appointment of a guardian *ad litem* on behalf of Marcellis Jr. The court ultimately decided "to take this under advisement for right now." After further discussion, Williams's counsel stated that he wanted "to emphasize for the Court" that "[w]hat is before the Court today *** is *** the petitions to appoint a guardian of the estate of [Marcellis Jr.]," which was "not the same thing as the administrator of [Marcellis Sr.'s] estate." The court replied that counsel was "[a]bsolutely correct." Later, by way of "recap," the court recalled that an administrator had not been named in case No. 20-P-873. Williams's counsel corrected the court, noting that Holmes had been appointed administrator, "but her powers ha[d] been limited because

---

No. 20-P-873.

she was improperly appointed." The court then confirmed with Holmes's counsel that Holmes was seeking appointment in both cases—Nos. 20-P-873 and 20-P-885. After further discussion on whether case No. 20-P-885 should be stayed, the court continued Williams's stay motion to May 1, 2023. In doing so, the court advised counsel preparing the written order to state that the parties had argued Williams's motion to stay, that the court had taken the matter under advisement, and that it would issue a ruling on May 1, 2023.

¶ 13    At the May 1, 2023, hearing, the trial court first addressed Williams's motion to stay in case No. 20-P-885. The court denied that motion. The court then stated that it would next address Holmes's petition in case No. 20-P-873 "to be [appointed] the guardian of [Marcellis Sr.'s] estate." Holmes's counsel clarified for the court that, in case No. 20-P-873, Holmes had petitioned to be appointed administrator, not guardian, of Marcellis Sr.'s estate. The court acknowledged that counsel was correct and that the court had misspoken. The court clarified that it had before it, in case No. 20-P-873, Holmes's petition to be appointed administrator, Williams's initial counterpetition to be appointed administrator, and Williams's amended counterpetition where she sought, alternatively, to have Chicago Trust appointed as administrator. The court then proceeded immediately to its ruling:

"After having considered the statute, all the arguments of counsel, the fact that [Holmes] is in a position to serve, the fact that [Williams] has pending criminal charges against her involving allegations where she had some level of involvement in the driving of a motor vehicle in which [Marcellis Sr.] was a passenger and a series of acts, when [Williams] as a result—well, a series of acts occurring during a period when Tafara Williams was driving that motor vehicle in which [Marcellis Sr.] was a passenger, ultimately deceased, I cannot appoint [Williams] to be the administrator in 20 P 873."

The court then stated that it was appointing "Tafara Williams" as administrator in case No. 20-P-873. When Holmes's counsel asked the court if it meant Holmes, the court responded, "You are right." The court clarified that it was granting Holmes's petition for appointment as administrator in case No. 20-P-873 and that "[i]t will be a supervised rather than an independent administration[,] requiring a higher level of scrutiny by this Court."

¶ 14    The trial court then turned to the petition for guardianship in case No. 20-P-885. The court stated that it was appointing a temporary guardian *ad litem* for case No. 20-P-885 to advise the court as to "who of the petitioning parties is in the best position to administer this estate." When Holmes's counsel asked the court if it meant who should be the "guardian of the estate," the court said, "Yes, the guardian." At that point, Williams's counsel reminded the court that Williams had filed an amended petition seeking "the appointment of [Chicago Trust] as guardian of the estate." After stating that it wanted to give the guardian *ad litem* time to review matters, the court set the "[counter]petition on 20 P 885 for hearing on July 18."

¶ 15    On May 1, 2023, the trial court issued a written order in case No. 20-P-873, stating that Williams's counterpetition to be appointed administrator was denied, Holmes's petition to be appointed administrator was granted, and the court would supervise Holmes's administration. The order referenced "the reasons stated on the record."

¶ 16    Williams did not file a motion seeking reconsideration of the May 1, 2023, order. She filed her original notice of appeal on May 24, 2023, and an amended notice of appeal on June 22, 2023.

¶ 17    On February 2, 2024, we entered an order directing the parties to submit supplemental briefing on two points:

"1) whether the language of section 9-3 of the Probate Act[ of 1975 (755 ILCS 5/9-3 (West 2020))], establishing preferences as to who can be appointed administrator of

decedent's estate, controls the question of whether Holmes can be appointed administrator over the minor child's nomination of an administrator via a guardian, and

2) whether the language of section 9-1 of the Probate Act, pertaining to who is disqualified to act as administrator, controls the question of whether Williams's [counter]petition was properly denied because she had pending felony charges."

¶ 18    The parties submitted their briefs as directed. Meanwhile, on February 21, 2024, Holmes filed a motion to supplement the record on appeal with the June 21, 2023, report of the guardian *ad litem* in case No. 20-P-885. The report stated that the guardian *ad litem* had reviewed the relevant materials and interviewed both Holmes and Williams. The report recommended that Holmes and First American Bank be appointed co-guardians of Marcellis Jr.'s estate and that, because of her "potential involvement as a named defendant or third-party defendant in the underlying litigation," Williams should not be appointed guardian of Marcellis Jr.'s estate. We took Holmes's motion with the case and rule on it below (*infra* ¶ 22).

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Williams contends that the trial court erred in appointing Holmes as administrator of Marcellis Sr.'s estate because (1) Holmes lacks standing for the appointment because she does not have an interest in Marcellis Sr.'s estate and (2) the court failed to conduct an evidentiary hearing before appointing Holmes and denying Williams's counterpetition to be appointed administrator. Holmes responds that, irrespective of the lack of an evidentiary hearing, the record was sufficient to support the denial of Williams's counterpetition to be appointed administrator because Williams had an unresolvable conflict of interest.

¶ 21    As an initial matter, we address Holmes's motion to supplement the record on appeal with the report of the guardian *ad litem*. Under Illinois Supreme Court Rule 329 (eff. July 1, 2017), a

party may seek to supplement the record on appeal if it is insufficient to present fully and fairly the questions raised on appeal. Here, the record on appeal is sufficient for us to resolve the issues raised. The guardian *ad litem*'s report, which was nothing more than the guardian's evaluation and recommendation of who should be appointed guardian of Marcellis Jr.'s estate, would not aid the resolution of this appeal. Further, the report did not exist when the trial court entered the May 1, 2023, order and, thus, was not considered by the court. See *Groce v. South Chicago Community Hospital*, 282 Ill. App. 3d 1004, 1009 (1996) ("Evidentiary material that was never presented to or considered by the trial court will not be considered by a reviewing court."); *Cato v. Thompson*, 83 Ill. App. 3d 321, 324-25 (1980) (motion to supplement the record on appeal denied where the documents sought to be added to the record were not part of the trial court record and were not considered by the trial court). Thus, we deny the motion to supplement the record.

¶ 22    As to the merits of the appeal, we first address Williams's argument that, to qualify as an administrator, Holmes must be an "interested person" with respect to the estate, as defined in section 1-2.11 of the Probate Act (755 ILCS 5/1-2.11 (West 2020)). According to Williams, Holmes does not qualify because "she lacks any financial interest or property right in [Marcellis Sr.'s] [e]state given that Marcellis Jr. is the sole heir, and [Holmes] is not Marcellis Jr.'s guardian."

¶ 23    The administration of a decedent's estate is a creature of statute. *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 15. The Probate Act (755 ILCS 5/1-1 *et seq.* (West 2020)) governs the administration of estates. *Zagaria*, 2013 IL App (1st) 122879, ¶ 15. When an individual dies intestate, a qualified individual may assume the duty of administrator to settle and distribute the decedent's assets under the supervision of the court. *Zagaria*, 2013 IL App (1st) 122879, ¶ 15. That individual assumes the duties of administrator after the court issues letters of administration. *Zagaria*, 2013 IL App (1st) 122879, ¶ 15 (citing 755 ILCS 5/9-2 (West 2010)).

¶ 24    Section 1-2.11 of the Probate Act defines an "interested person" for purposes of the Probate Act. It provides, in pertinent part, that an interested person is "one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, including without limitation an heir, legatee, creditor, person entitled to a spouse's or child's award and the representative." 755 ILCS 5/1-2.11 (West 2020). This language nowhere suggests that only an interested person qualifies as the administrator of an estate.

¶ 25    More importantly, article IX of the Probate Act, which governs letters of administration, does not require that an administrator be an interested person. See 755 ILCS 5/art. IX (West 2020). Section 9-1 of the Probate Act (755 ILCS 5/9-1 (West 2020)) states that any "person who has attained the age of 18 years, is a resident of the United States, is not of unsound mind, is not an adjudged person with a disability as defined in this Act and has not been convicted of a felony, is qualified to act as administrator." Status as an interested person under section 1-2.11 is not among the qualifications listed.

¶ 26    Further, section 9-4 of the Probate Act (755 ILCS 5/9-4 (West 2020)) provides, in relevant part, that "[a]nyone desiring to have letters of administration issued on the estate of an intestate decedent shall file a petition therefor in the court of the proper county." Such petition shall state, among other things, "the facts showing the right of the petitioner to act as or to nominate the administrator." 755 ILCS 5/9-4(f) (West 2020). Nothing in section 9-4 suggests that "anyone" desiring to be appointed administrator must be an interested person within the meaning of section 1-2.11. Nor does any other section of article IX contain any language requiring that an administrator be an interested person as defined in section 1-2.11. Thus, we reject Williams's

argument that the trial court erred in appointing Holmes as administrator because she was not an interested person under section 1-2.11.

¶ 27     Although Holmes met the threshold qualifications of administrator, our analysis does not end there. Section 9-2 of the Probate Act (755 ILCS 5/9-2 (West 2020)) provides, in pertinent part, that, "[w]hen a person dies intestate, letters of administration shall be issued in accordance with the preferences in Section 9-3." Section 9-3 (755 ILCS 5/9-3 (West 2020)), in turn, sets forth the order of preference for who can be appointed administrator. That order of preference is, in pertinent part: the decedent's surviving spouse, legatees (with preference for those who are children), children, grandchildren, parents, and brothers and sisters. 755 ILCS 5/9-3(a)-(f) (West 2020). Section 9-3 further provides that the nominee of any of those preferred persons may also serve as administrator. 755 ILCS 5/9-3 (West 2020). Section 9-3 adds that, besides any person qualified to act as administrator (or nominate another), a guardian of the estate of a minor person who is not qualified to act as administrator solely because of his or her minority may nominate on behalf of the minor according to the order of preference set forth in section 9-3. 755 ILCS 5/9-3 (West 2020). Williams is correct that the trial court's May 1, 2023, order appointing Holmes as administrator was contrary to section 9-3's order of preference.

¶ 28     To explain the trial court's error, we briefly recount the pertinent history of this case. On October 26, 2020, Holmes filed a petition for letters of administration. In that petition, she stated that she was Marcellis Sr.'s mother. That status qualified her, absent one of the exceptions set forth in section 9-1, as a person who could seek letters of administration. See 755 ILCS 5/9-3(e) (West 2020). She further identified several siblings of Marcellis Sr. Those siblings were also qualified, absent a limitation under section 9-1, to seek letters of administration. See 755 ILCS 5/9-3(f) (West 2020). She further identified Marcellis Jr. as the "potential son" of Marcellis Sr.

¶ 29     The next day, the trial court, based on Holmes's petition, identified the heirs of Marcellis Sr. as (1) Holmes, (2) Marcellis Sr.'s siblings, (3) Marcellis Sr.'s unknown father, and (4) Marcellis Jr., as a "potential son." The court also appointed Holmes as administrator. The court did so without any apparent consideration of whether Marcellis Jr. was, in fact, the minor son of Marcellis Sr. and, thus, whether he had preference over Holmes under section 9-3.

¶ 30     Two days later, on October 29, 2020, Williams filed her counterpetition to be appointed administrator, her emergency motion to vacate the order appointing Holmes, and her petition to be appointed guardian of Marcellis Jr.'s estate. More importantly, Williams sought DNA testing to establish that Marcellis Jr. was, in fact, Marcellis Sr.'s son. That testing conclusively established that Marcellis Jr. was Marcellis Sr.'s son.

¶ 31     Once established as Marcellis Sr.'s son, Marcellis Jr.—or his nominee—took preference over Holmes under section 9-3. Although Holmes qualified under the Probate Act as a potential administrator, she was lower on the preference list than Marcellis Jr. However, because Marcellis Jr. was a minor, he could not act as administrator, although his guardian could nominate a person to act as administrator. See 755 ILCS 5/9-3 (West 2020). Indeed, on October 29, 2020, Williams filed in case No. 20-P-885 a petition to be appointed guardian of Marcellis Jr.'s estate. The guardianship action was still pending when the trial court decided, on May 1, 2023, the issue of who should serve as administrator of Marcellis Sr.'s estate and appointed Holmes. However, there is no indication in the record that the court, before appointing Holmes on May 1, 2023, considered the preferences set forth in section 9-3. We reject Holmes's argument that her appointment was proper because, at the time, Williams had not yet been appointed guardian of Marcellis Jr.'s estate. Rather, it was premature to appoint Holmes given that Williams's petition to be appointed guardian was pending. Indeed, doing so effectively overrode the preferences in section 9-3 that placed

Marcellis Jr., as son, ahead of Holmes. Thus, because a nominee appointed by the guardian of Marcellis Jr.'s estate would take precedence over Holmes, and Williams's petition to be the guardian of Marcellis Jr.'s estate remained pending, we hold that the trial court improperly appointed Holmes.

¶ 32    Williams is also correct that the trial court erred in not holding an evidentiary hearing before its May 1, 2023, ruling on Williams's and Holmes's respective petitions for appointment as administrator of Marcellis Sr.'s estate.[2]

¶ 33    Where an evidentiary hearing is required to determine factual matters related to an estate, the trial court abuses its discretion when it fails to conduct such a hearing. *In re Estate of Hutchinson*, 2023 IL App (2d) 220035-U, ¶ 34.[3] Here, the record shows that, on April 27, 2023, the guardianship case, No. 20-P-885, was set to consider Willams's motion to stay the proceeding and Homes's motion regarding an exhibit in the same case. At that hearing, the focus was clearly

---

[2]Holmes asserts that Williams forfeited her challenge to the lack of an evidentiary hearing by failing to object at the May 1, 2023, hearing or seek reconsideration in the trial court. However, to the extent Williams forfeited the issue, such a forfeiture merely limits her ability to raise the issue and not our ability to consider it. See *People v. Donoho*, 204 Ill. 2d 159, 169 (2003). Our responsibility for a just result and the maintenance of a sound and uniform body of precedent sometimes overrides the consideration of forfeiture that stems from the adversarial character of our system. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). Thus, we opt to decide the issue irrespective of any forfeiture.

[3]Justice Hutchinson had no familial or other relationship with the parties in that case. See *Hutchinson*, 2023 IL App (2d) 220035-U, ¶ 1 n.1.

on Williams's motion to stay the guardianship case. There was extensive discussion regarding the guardianship proceeding and whether it should be stayed. Moreover, the parties and the court clarified several times that the guardianship case was distinct from the administration case, No. 20-P-873.[4] The court continued the matter to May 1, 2023, to rule on the motion to stay the guardianship proceeding. In doing so, the court did not mention that, at the May 1 hearing, it would also address, let alone dispose of, the respective petitions for appointment as administrator in case No. 20-P-873.

¶ 34     Yet, at the May 1, 2023, proceeding, after initially addressing and denying Williams's motion to stay the guardianship proceeding, the court stated that it would address the petitions for appointment as administrator. The court then immediately ruled on those petitions, stating that, "[a]fter having considered the statute, all the arguments of counsel, the fact that [Holmes] is in a position to serve, [and] the fact that Tafara Williams has pending criminal charges against her," it could not appoint Williams as administrator and was instead appointing Holmes. The court's written order entered that day recited that the matter came before the court that day "for status," recounted its ruling, and referenced "the reasons stated on the record." The parties had no notice that the issue would be addressed nor any opportunity to offer evidence or argument. Thus, because it failed to provide due and proper notice, the court erred in denying Williams's counterpetition for appointment as administrator. "Due process entails an orderly proceeding wherein a person is served with notice, and has an opportunity to be heard and to present his or her objections, at a

---

[4]Although several times the trial court misspoke and seemed confused as to which case was before it, any such confusion was essentially clarified by the attorneys and was not material to the ruling of the court.

meaningful time and in a meaningful manner, in a hearing appropriate to the nature of the case." *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31.

¶ 35 We reject Holmes's other arguments for affirming the trial court's ruling. First, we reject her argument that Williams was not qualified to serve as administrator because she had pending criminal charges against her. As discussed, section 9-1 of the Probate Act lists the qualifications for serving as an administrator. See 755 ILCS 5/9-1 (West 2020). Section 9-1 prohibits a convicted felon from serving as an administrator, but it does not bar anyone with a merely pending felony charge. Thus, the pending felony charge against Williams did not provide a proper basis to deny her counterpetition.

¶ 36 Second, we do not accept Holmes's contention that, because Williams might be named as a defendant or third-party defendant in the underlying federal actions, it was "a realistic possibility, if not probable" that she would have a conflict of interest that interfered with her duties as administrator. Clearly, Illinois courts have recognized that an otherwise qualified potential administrator of an estate might be disqualified because of an "unresolvable conflict of interest." See *In re Estate of Abell*, 395 Ill. 337, 347-48 (1946); *In re Estate of Storer*, 131 Ill. App. 2d 1049, 1053-54 (1971). Nevertheless, before denying Williams's counterpetition to be appointed administrator, the trial court here never considered any evidence of whether Williams had an actual unresolvable conflict of interest. Nor did the court offer or allow either party to provide evidence on this issue. We cannot affirm on this record. See *In re Estate of Kaluza*, 62 Ill. App. 3d 267, 270 (1978).

¶ 37 For the foregoing reasons, we vacate the order of May 1, 2023, which granted Holmes's petition and denied Williams's counterpetition, to be appointed administrator of Marcellis Jr.'s estate. We remand for further proceedings on the respective petitions. In doing so, we emphasize

that, before the trial court resolves the issue of who should be appointed administrator, it should first rule on Williams's petition to be appointed guardian of Marcellis Jr.'s estate, as that ruling will impact the preferences set forth in section 9-3 of the Probate Act.

¶ 38                                III. CONCLUSION

¶ 39    For the reasons stated, we vacate the judgment of the circuit court of Lake County and remand for further proceedings consistent with this order.

¶ 40    Vacated and remanded.

*In re Estate of Stinnette*, **2024 IL App (2d) 230174**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-P-873; the Hon. Patricia S. Fix, Judge, presiding. |
| **Attorneys for Appellant:** | Blake Horwitz and Hayden Dinges, of Blake Horwitz Law Firm, of Chicago, and Fredric Bryan Lesser, of Lesser Lutrey Pasquesi & Howe LLP, of Lake Forest, for appellant. |
| **Attorneys for Appellee:** | Donald J. Morrison, of Kelleher & Holland, LLC, of North Barrington, and Joseph A. Power Jr. and James I. Power, of Power Rogers, LLP, of Chicago, for appellee. |