**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250286-U

Order filed March 18, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* ESTATE OF TERRY ENGLE, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Deceased | ) | Will County, Illinois, |
| | ) | |
| | ) | Appeal Nos. 3-25-0286 |
| | ) | 3-25-0287 |
| | ) | Circuit No. 24-PR-313 |
| | ) | |
| (Ronald Klinger, Petitioner and Cross- | ) | Honorable |
| Respondent-Appellee, v. Dianna L. Kingsley, | ) | David Garcia, |
| Respondent and Cross-Petitioner-Appellant.) | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| *In re* ESTATE OF BARRY ENGLE, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Deceased | ) | Will County, Illinois, |
| | ) | |
| | ) | Appeal Nos. 3-25-0286 |
| | ) | 3-25-0287 |
| | ) | Circuit No. 24-PR-584 |
| | ) | |
| (Ronald Klinger, Petitioner and Cross- | ) | Honorable |
| Respondent-Appellee, v. Dianna L. Kingsley, | ) | David Garcia, |
| Respondent and Cross-Petitioner-Appellant.) | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The trial court misapplied sections 9-1, 9-2, and 9-3 of the Probate Act when it appointed the decedents' purported cousin as administrator of their estates, even though the decedents' purported half-sister had filed a cross-petition for letters of administration. However, the trial court did not abuse its discretion in setting a briefing schedule on the question of heirship under section 5-3 of the Probate Act. Order vacated and case remanded.

¶ 2     Petitioner-appellee, Ronald Klinger, and cross-petitioner-appellant, Dianna Kingsley filed cross-petitions for letters of administration over the estate of decedents, brothers Terry and Barry Engle, pursuant to the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2024)). Both Terry and Barry died intestate. The trial court granted Ronald's petitions, denied Dianna's petitions, and appointed Ronald to be the administrator of the decedents' estates. The court continued the matter of Dianna's affidavits of heirship as to both decedents and set a briefing schedule. Ronald, a purported cousin, represented that he would use the continuance to investigate Dianna's claim that she was a half-sister and, ultimately, either agree with Dianna's affidavit of heirship or object and file a competing affidavit of heirship.

¶ 3     Dianna appeals, arguing that the trial court misapplied sections 9-1, 9-2, and 9-3 of the Probate Act, in that, read together, they mandate that preference be given to a half-sister over a cousin, assuming each are qualified to serve as administrators. See *id*. §§ 9-1, 9-2, 9-3. She also argues that the trial court misapplied section 5-3 of the Probate Act when it failed to declare heirship consistent with her affidavit and instead postponed the matter for further briefing and a hearing. See *id*. § 5-3. For the reasons that follow, we vacate the trial court's appointment of Ronald as administrator and remand the case for a determination of heirship, which will inform the related question of which party should serve as the administrator of the estates.

2

¶ 4    I. BACKGROUND

¶ 5    On March 22, 2024, Terry Engle passed away. On May 8, 2024, his brother, Barry Engle, petitioned for letters of administration requesting to be appointed the representative of Terry's estate. Barry estimated the value of Terry's estate to be $226,000. Barry also filed an affidavit of heirship, which asserted that he was the only surviving heir at law and provided in part:

"[Terry's] parents were Clifford Engle and Unknown Mother (upon information and belief her name was possibly Lynn Engle);" "Unknown mother predeceased [Terry], upon information and belief she died when [Terry] was an infant;" and "Upon information and belief the unknown mother had no other children or marriages."

¶ 6    On May 20, 2024, the trial court appointed Barry as the representative of Terry's estate. It also entered an order declaring heirship that identified the sole heir of Terry's estate to be Barry.

¶ 7    On June 3, 2024, Barry passed away. On September 9, 2024, the law firm that had been representing Barry, Giamanco Law Partners, petitioned to discharge Barry as representative of Terry's estate and appoint Ronald, a cousin, as representative of Terry's estate. The firm informed the court that they had located Ronald and that he was willing and able to serve as the representative. It believed a total of five cousins existed who would be the next heirs, and it was working to locate them. Neither Ronald, nor any of the purported cousins, filed affidavits of heirship. The trial court continued the matter to November 18, 2024.

¶ 8    On November 14, 2024, Dianna, represented by Kogut & Associates, filed an affidavit of heirship as to each decedent. In them, Dianna asserted that she shared a biological mother with Terry and Barry and was their half-sister. 755 ILCS 5/5-3(b) (West 2024) (affidavit of heirship). She further averred that her and the decedents' mother was Sonia Lynn Larimar. Sonia predeceased the decedents and was married five times. As a result of Sonia's first marriage, two

3

children were born, Dianna and Norton James Crawford (whose whereabouts are unknown). Sonia's second marriage was to decedents' father and they had three children. The third child, Gregory Engle, predeceased decedents, never married, and never had children. Sonia then entered into a relationship with, but did not marry, George Milroy. They had one child, Kimberly Giroux, who is living and of legal age. Sonia's next three marriages did not result in any children. Aside from her affidavits, Dianna did not attach supporting documents.

¶ 9        On November 18, 2024, Dianna filed cross-petitions for letters of administration for the estates of both Terry and Barry. In them, she estimated the value of Terry's estate to be $226,000 and Barry's estate to be $260,000. She provided that she is decedents' sister and is legally qualified to act as administrator or nominate a resident of Illinois to act as administrator. She nominated John P. Bransfield, an attorney, to act as administrator for both estates. She also acknowledged that Norton (whereabouts unknown) and Kimberly had equal preference under the statute to serve as or nominate an administrator. Kimberly filed an appearance and consented to an immediate hearing as to the appointment of Dianna's nominee, Bransfield.

¶ 10        On December 30, 2024, Dianna moved to amend the May 2024 declaration of heirship in Terry's estate, which had declared Terry's sole heir to be Barry. Dianna sought a declaration consistent with her November 14, 2024, affidavit of heirship. Dianna did not separately move for a declaration of heirship with regard to Barry's estate.

¶ 11        On February 3 and February 7, 2025, Ronald filed verified responses to Dianna's cross-petitions for letters of administration in Barry and Terry's estates, respectively. In the responses, Ronald, now represented by Kontoh Scott & Associates, P.C., recounted that he was decedents' cousin; that the Giamanco law firm had contacted him to represent the estates and he agreed to pursue the appointment; that he has been handling the decedents' financial affairs since their

4

deaths, has taken necessary steps to preserve the estates while locating the heirs, and, as to Barry, was the informant on the death certificate and handled all funeral arrangements "without any involvement or contribution by [Dianna]." Ronald further pled that "the cross-petition[s] see[k] to appoint John P. Bransfield who is not identified as an heir or otherwise having any connection with the decedent."

¶ 12                                    A. February 18, 2025, Hearing

¶ 13          On February 18, 2025, the trial court heard Dianna's motion to amend the declaration of heirship as to Terry as well as the cross-petitions for letters of administration. Dianna did not appear, and her counsel proceeded to argue on the pleadings. Relevant here, the following argument took place:

> "MR. KOGUT: *** Apparently none of [Sonia's] children were familiar with each other, which led to the incorrect heirship that was established in Terry's estate.
>
> We have a motion to amend the heirship. We have supplied the records of vital statistics to counsel to verify the relationships.
>
> We ask the court to grant that motion. Then on the—
>
> THE COURT: Do you have any objection?
>
> MS. SCOTT: *** I think *** the cart [is] being put before the horse.
>
>                                    ***
>
> [Ronald] is not aware of Dianna Kingsley who filed as the petitioner being alive. He knew of her. And I believe that she had predeceased [Terry and Barry].
>
> And so there is some issue there. We were hoping to see her today as your Honor had ordered everyone to be here in person or at least by [Z]oom.
>
> So as it relates to amending their heirship, I am not sure if we are quite there yet.

5

THE COURT: Well, what is he—what is his relation to [the decedents]?

[RONALD]: I am [their] cousin.

THE COURT: All right. And [Dianna]?

UNIDENTIFIED: Half[-]sister.

*** 

THE COURT: All right. And she wants to be *** the administrator?

MR. KOGUT: No. She has nominated *** a probate attorney ***.

But as half[-]sister, she has preference [to act or nominate.] We have the other half[-]sister already filed a waiver. The third half[-]sibling['s] whereabouts [are] unknown[.]

*** 

The only reason *** set forth in the *** response [to] our cross-petition [is] that *** Mr. Bransfield who is a nominee is not an heir.

That is really irrelevant. We have preference[.] I think the affidavit submitted to the Court [under the Probate Act], proof of heirship by affidavit which we are doing with no objection filed.

We provided records of vital statistics to counsel to establish our client's relationship. So we ask the Court today to proceed on the motion to amend this file.

THE COURT: What was her contact with decedents?

*** 

MR. KOGUT: She was aware of them but really no contact.

THE COURT: So there was no relationship between them and—

6

MR. KOGUT: Not on a personal level, just on a legal.

MS. SCOTT: There was absolutely no relationship. [Barry] filed an affidavit that stated he had no siblings. He was not even aware of.

MR. KOGUT: Again, it is irrelevant, Judge.

THE COURT: Yes. But at this stage of the game, I don't understand why I would make her an administrator.

She had no contact, nothing to do with them. *She is an heir maybe*. So I don't understand, you know, why I would appoint her as a co-administrator.

MR. KOGUT: Not [']co['], Judge. *** [S]he [has] preference, she has nominated Mr. Bransfield.

THE COURT: Why would I do that though?

MR. KOGUT: She has preference, Judge.

THE COURT: And [Ronald] doesn't have preference?

MR. KOGUT: No.

THE COURT: Why not?

MR. KOGUT: He is a cousin ***.

THE COURT: Just because she has preference doesn't mean that I am obligated to appoint her; is that correct?

MR. KOGUT: *Well, there is no basis *** not to*[.]

THE COURT: Do you have anything[,] [Ms. Scott]?

MS. SCOTT: Your Honor, again, [Ronald] had a close relationship. He took care of the funeral expenses. He buried Barry Engle.

7

He has been closely involved with them and has preserved the estate.

MR. KOGUT: Judge, [the Giamanco law firm] found [Ronald]. He didn't have much of a relationship. *** She believed he was the next heir in line, which is incorrect. ***.

THE COURT: He is still an heir, right?

***

MR. KOGUT: Not under our affidavit, Judge. He is not an heir. [There are] [h]alf-sibling[s].

THE COURT: Yes, but your affidavit is an affidavit. It doesn't mean that he is not an heir. *This stuff that we are going to have to prove—if you guys are going to argue that, that is something we are going to have to prove in the future.*

***

THE COURT: *** I am going to find at this point, I am not going to appoint an attorney to be the quote *** administrator and add that cost to this estate. I don't even know how much money is in there.

So I am going to deny your motion [to nominate Bransfield as the administrator].

MR. KOGUT: Judge, can I raise an objection for the record?

THE COURT: Sure.

MR. KOGUT: There is no evidence whatever relationship—

THE COURT: Your client is not even here.

MR. KOGUT: She didn't have to be, Judge.

THE COURT: I ordered everybody to appear. Look at the order." (Emphases added.)

¶ 14 On February 18, 2025, the trial court entered written orders appointing Ronald as administrator of both estates and denying Dianna's cross-petition for letters of administration as to both estates. The question of heirship remained pending.

¶ 15                                B. Motion to Reconsider

¶ 16                                     1. Pleadings

¶ 17 On March 13, 2025, Dianna moved to reconsider the trial court's appointment of Ronald as administrator of both estates and denial of her cross-petition for letters of administration as to both estates. Dianna argued that the trial court erred in its application of sections 9-1, 9-2, and 9-3 of the Probate Act. 755 ILCS 5/9-1, 9-2, 9-3 (West 2024). She urged that those sections require that a sister (or half-sister) has statutory preference over a cousin to act as or nominate an administrator, assuming both otherwise meet the minimum statutory requirements.

¶ 18 The motion to reconsider also pled that Dianna had good cause to have missed the February 18, 2025, hearing. Unbeknownst to her counsel, Dianna's husband had a medical emergency resulting in heart surgery on that day. Dianna herself had been hospitalized with respiratory issues, and the motion to reconsider provided that a supporting affidavit would be forthcoming. On March 31, 2025, Dianna supplemented her motion with said affidavit confirming that her husband underwent emergency heart surgery on February 18, 2025.

¶ 19 On May 12, 2025, Ronald responded to Dianna's motion to reconsider. He argued that the trial court did not err in its application of sections 9-1, 9-2, and 9-3 of the Probate Act, because Dianna failed to appear at the February 18, 2025, evidentiary hearing and prove that she was indeed the decedents' half-sister. Ronald argued that the matter was in doubt because, when Barry filed

9

his affidavit of heirship in Terry's estate, Barry represented that there were no other siblings. Ronald contended that Dianna's absence from the February 18, 2025, hearing should not be excused because her attorney could have asked for a continuance. Ronald noted that he, in contrast, had appeared at the hearing and had offered testimony to establish that he was the decedents' cousin.

¶ 20    On May 23, 2025, Dianna replied in support of her motion to reconsider. She took issue with Ronald's characterization of the February 18, 2025, hearing as an evidentiary hearing at which he testified. She contended, instead, that the court had ruled on the pleadings following argument. She argued that there was no question of fact that she was decedents' half-sister; she had filed an affidavit of heirship in compliance with section 5-3(b) of the Probate Act, and Ronald had not objected to it. Moreover, Barry's representation in his May 2024 affidavit of heirship for Terry's estate that there were no other siblings does not create doubt as to Dianna's status. Barry's May 2024 affidavit was simply unreliable in that he did not know the name of his own mother, and he omitted the existence of a brother, Gregory, with whom he shared both biological parents and who had predeceased Terry. Finally, Dianna argued that Ronald's challenge to her status as half-sister was disingenuous where he himself had never filed an affidavit of heirship or sought a declaration of heirship.

¶ 21    Also on May 23, 2025, Dianna moved for a declaration of heirship in *Barry's* estate. In it, she averred to the same set of facts set forth in her November 14, 2024, affidavit of heirship. She attached, *inter alia*, public records of Barry's birth, Terry's birth, and Gregory's birth; a 1962 marriage certificate between decedents' parents Clifford and Sonia; a 1970 divorce decree between the decedents' parents; a record of Sonia's social security applications and various last names appearing to be from Ancestory.com; a 1997 obituary for Sonia; a 1962 divorce decree between

10

Dianna's parents; a public record of Dianna's birth, Norton's birth, and Kimberly's birth; Dianna's marriage certificates (three); Sonia's remaining marriage certificates (three); and Kimberly's marriage certificate. Dianna's counsel also represented that, on January 7, 2025, he had e-mailed the same vital records to Ronald's counsel of record at that time.

¶ 22                                    2. June 4, 2025, Hearing

¶ 23        On June 4, 2025, the trial court heard Dianna's motion to reconsider. Dianna was present. The parties argued in a manner consistent with their pleadings. Dianna's counsel further explained that, when he appeared at the February 2025 hearing, he had received no indication from opposing counsel that Ronald planned to dispute Dianna's status as the half-sister. Because Dianna's counsel did not anticipate that Ronald would dispute Dianna's status, he had not asked for a continuance due to Dianna's failure to appear. Dianna's counsel also noted that the February 2025 hearing had been scheduled for 10:00 a.m., not 1:30 p.m., which is the designated time for evidentiary hearings in the trial court's standing order.

¶ 24        Ronald responded to the fact that he had not yet filed an affidavit of heirship. He explained that, although affidavits of heirship are typically filed in conjunction with the petition for letters of administration, the statute does not require it. Ronald did not file an affidavit of heirship precisely because he considered it to be an open question that was still under investigation. "Today is the first time we have [seen] Dianna or even a photo [of her.]"

¶ 25        The trial court denied the motion to reconsider as to the appointment of an administrator under section 9-3 of the Probate Act, explaining:

"At the time of the hearing, *** you had ample opportunity to ask for a continuance. I would have [given] it. You decided to proceed.

11

And now you are saying there was no evidentiary hearing. Well, you should have objected to that then. So I am going to deny your motion to reconsider."

¶ 26    Dianna's counsel then raised the question of heirship under section 5-3 of the Probate Act:

"MR. NOVAK: Judge, just as far as the motion to establish heirship, in Barry's estate and the motion to amend heirship in Terry's estate, *** those are still pending.

MS. SCOTT: That's correct. They are still pending. If you want to set it for status, or we can do a briefing schedule. We are just investigating.

MR. NOVAK: I would prefer a briefing schedule.

THE COURT: All right.

MS. SCOTT: We will take 28 days. ***

                              ***

THE COURT: The heirs are the heirs.

MS. SCOTT: Correct.

MR. NOVAK: Right.

THE COURT: Can't get around that. I mean, [Ronald] might be the administrator, but he has *** to give to the heirs, and that is it.

                              ***

I mean *** [Ronald's counsel] say[s] they are doing an investigation. So you [Dianna's counsel] already have who you think the heirs are. They are going to have to confirm or *** disagree, then we have to have a hearing then. So give me a date."

¶ 27    Dianna timely appealed.

¶ 28                          II. ANALYSIS

¶ 29    Dianna appeals the trial court's appointment of Ronald as the administrator of the decedents' estates.  She contends that sections 9-1, 9-2, and 9-3 of the Probate Act give her, a half-sister, preference over Ronald, a cousin, to act as or appoint an administrator.  755 ILCS 5/9-1, 9-2, and 9-3 (West 2024).  She also argues that the trial court erred in setting the question of heirship under section 5-3 of the Probate Act for a hearing at a later date, when Ronald has not disputed or objected to her affidavits of heirship.  *Id*. § 5-3.  Although the question of heirship remains pending, we have jurisdiction to hear this appeal pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016), which allows for the review of orders without a special finding where an "order [is] entered in the administration of an estate *** which finally determines a right or status of a party."

¶ 30    A. Appointment of an Administrator: Sections 9-1, 9-2, and 9-3 of the Probate Act

¶ 31    The administration of a decedent's estate is governed by the Probate Act.  *In re Estate of Stinnette*, 2024 IL App (2d) 230174, ¶ 23.  When a decedent dies intestate, sections 9-1, 9-2, and 9-3 of the Probate Act direct the trial court's appointment of an administrator to settle and distribute the decedent's assets under the supervision of the court.  *Id*. ¶¶ 23, 27-28 (citing 755 ILCS 5/9-1, 9-2, and 9-3 (West 2024)).

¶ 32    Section 9-1 delineates who may act as an administrator: "A person who has attained the age of 18 years, is a resident of the United States, is not of unsound mind, is not an adjudged person with a disability as defined in this Act and has not been convicted of a felony, is qualified to act as administrator."  755 ILCS 5/9-1 (West 2024).

¶ 33    Section 9-2 provides: "When a person dies intestate, letters of administration *shall be issued in accordance with the preferences in Section 9-3* upon petition therefor, unless the issuance of letters is excused[.]"  (Emphasis added.)  *Id*. § 9-2.

13

¶ 34    Section 9-3, which we quote at length to aid in our subsequent discussion of the case law, provides:

"The following persons are *entitled to preference in the following order* in obtaining the issuance of letters of administration and of administration with the will annexed:

(a) The surviving spouse or any person nominated by the surviving spouse.

(b) The legatees or any person nominated by them, with preference to legatees who are children.

(c) The children or any person nominated by them.

(d) The grandchildren or any person nominated by them.

(e) The parents or any person nominated by them.

*(f) The brothers and sisters or any person nominated by them.*

*(g) The nearest kindred or any person nominated by them.*

(h) The representative of the estate of a deceased ward.

(i) The Public Administrator.

(j) A creditor of the estate.

Only a person qualified to act as administrator under this Act may nominate, except that the guardian of the estate, if any, otherwise the guardian of the person, of a person who is not qualified to act as administrator solely because of minority or legal disability may nominate on behalf of the minor or person with a disability in accordance with the order of preference set forth in this Section. A person who has been removed as representative under this Act loses the right to name a successor.

14

When several persons are claiming and are equally entitled to administer or to nominate an administrator, the court may grant letters to one or more of them or to the nominee of one or more of them. The letters shall provide the names of each administrator if co-administrators are granted by the court." (Emphases added.) *Id*. § 9-3.

¶ 35 In construing a statute, our main objective is to ascertain and give effect to the legislature's intent. *In re Estate of Cage*, 381 Ill. App. 3d 110, 112 (2008). The best indication of legislative intent is the plain language of the statute. *Id*. at 113. The court's interpretation of the Probate Act is subject to *de novo* review. *In re Estate of Poole*, 207 Ill. 2d 393, 401 (2003).

¶ 36 With regard to sections 9-1, 9-2, and 9-3 of the Probate Act, if an applicant or her nominee qualifies to serve under section 9-1, the statutory preferences for letters of administration must be followed. See, *e.g.*, *Stinnette*, 2024 IL App (2d) 230174, ¶ 31. Indeed, this is consistent with the plain language of section 9-2, which directs that letters of administration *shall* be issued in accordance with the preferences in Section 9-3. 755 ILCS 5/9-2 (West 2024). There is a narrow exception to the rule of statutory preference, inapplicable here, in that a trial court may exercise its discretion to pass over an otherwise qualified applicant in the "unusual" and "extreme" circumstance that the applicant has "considerable hostility" toward the estate or an unresolvable conflict of interest in serving as its administrator. See *In re Abell's Estate*, 329 Ill. App. 73, 80 (1946) ("the statute establishes a norm which is not at variance with any rational legal concept of the equitable powers of the County Court in exercising its discretion in those *exceptional cases* where the literal following of the statute would result in *patent injustice* by reason of *extreme adversity of interest*" (emphases added)).

¶ 37 Two cases best illustrate these principles, *Poole*, 207 Ill. 2d 393, and *Stinnette*, 2024 IL App (2d) 230174. In *Poole*, the decedent was a still-born infant who, at eight months gestation,

was delivered by Cesarean section after her mother was killed in a car accident. *Poole*, 207 Ill. 2d at 395. It was undisputed that the decedent survived her mother. *Id.* The decedent's estate had received a monetary settlement related to the car accident. *Id.* at 396. The trial court initially granted letters of administration to the decedent's maternal grandmother. *Id.* at 395. The decedent's purported biological father timely petitioned to revoke the grandmother's letters of administration, arguing that he, as the decedent's parent, had statutory preference under section 9-3 of the Probate Act to act as or nominate an administrator. *Id.* at 397. He attached an affidavit of parenthood, in which he averred that he and the mother had lived together, unmarried yet as a family unit, for nearly one year prior to the accident; during that time he contributed the mother's support, maintenance, and comfort; he acknowledged that he was the father immediately upon learning of the pregnancy; and the couple's friends acknowledged that the couple were expecting a child. *Id.* at 396-97. Also, the local registrar issued a certificate of fetal death, in which he was listed as the father and the decedent was given his surname. *Id.* at 397. The trial court denied his petition. *Id.*

¶ 38 The Illinois Supreme Court affirmed the appellate court's reversal of the trial court's decision. *Id.* at 407. Relevant here, it noted that the plain language of section 9-3 of the Probate Act gave preference to a parent over a grandparent for letters of administration. *Id.* It recognized, however, that the purported father's priority depended on his ability to prove, by available DNA material, that he was the father. *Id.* Accordingly, it remanded the case for a hearing on the purported father's status. *Id.* It concluded that, "by requiring [the purported father] to establish his parentage *** [it has] guarded, to an extent, against the danger of fraudulent claims of paternity being asserted in cases such as this." *Id.*

16

¶ 39        In *Stinnette*, the decedent's mother petitioned for letters appointing her as administrator of his estate. *Stinnette*, 2024 IL App (2d) 230174, ¶ 5. She also filed an affidavit of heirship, identifying the heirs as herself, the decedent's siblings, and the decedent's "potential son," M (a minor). *Id.* The next day, the trial court appointed the decedent's mother as administrator and declared the heirs consistent with her affidavit, including M. *Id.* ¶ 6. Two days later, M.'s mother, who had not married the decedent, timely petitioned and/or cross-petitioned to vacate the appointment of the decedent's mother, to appoint herself as the administrator (which she later amended to nominate the Chicago Trust Company as administrator), to declare M. as the sole heir, and to direct the coroner to submit a DNA sample from the decedent to confirm M.'s status as the decedent's son. *Id.* ¶ 7. She also sought to be appointed the guardian of M.'s estate. *Id.* ¶ 8. At the trial court's direction, a DNA test was performed, and it was established with 99% certainty that M. was the decedent's son. *Id.* ¶ 9.

¶ 40        The trial court denied M.'s mother's petition to revoke the appointment of the decedent's mother, noting that it would not appoint M.'s mother to administer the decedent's estate where she had pending felony charges against her that were related to the decedent's death. *Id.* ¶ 13. (M.'s mother was the driver and the decedent was the passenger when a police officer shot and killed the decedent; M.'s mother was subsequently charged with aggravated fleeing or attempting to elude a police officer; the police officer was subsequently charged with second degree murder. *Id.* ¶ 3.) The trial court left pending the question of guardianship over M.'s estate. *Id.* ¶ 18.

¶ 41        The appellate court determined that the trial court erred in appointing the decedent's mother to be the administrator of the decedent's estate. *Id.* ¶ 31. It observed that the trial court appointed her "without any apparent consideration of whether [M.] was, in fact, the minor son of [the decedent] and, thus, whether he had preference over [the decedent's mother] under section 9-3."

17

*Id.* ¶ 29. Before the trial court ruled on M's mother's petition to revoke and cross-petition for letters of administration, DNA testing established that M. was the decedent's son. *Id.* ¶ 31. Per section 9-3 of the Probate Act, M. had preference over the decedent's mother to act as or nominate an administrator. *Id.* While his minority status precluded him from acting as the administrator, his guardian was authorized to nominate a person to act as the administrator. *Id.*

¶ 42    The appellate court rejected the decedent's mother's argument that her appointment was proper because M.'s mother's petition to be appointed the guardian of M.'s estate remained pending. *Id.* The court explained that it was *premature* to appoint the decedent's mother under such circumstances. *Id.* "Indeed, doing so effectively overrode the preferences in section 9-3 that placed [M.], as [the decedent's] son, ahead of [the decedent's mother]." *Id.*

¶ 43    The appellate court also rejected the decedent's mother's argument that M.'s mother's pending felony charges necessarily disqualified her from serving as or nominating an administrator. *Id.* ¶ 35. While section 9-1 prohibits a convicted felon from serving as an administrator, it does not bar a person who has pending felony charges. *Id.* The appellate court acknowledged the possibility that, because the pending charges were related to the decedent's death, there was a possibility that M.'s mother would have an "unresolvable" conflict of interest in serving as the decedent's administrator. *Id.* ¶ 36. As to this question, however, the trial court had not sufficiently considered such evidence. *Id.*

¶ 44    Accordingly, the appellate court vacated the order that granted the grandmother letters of administration. *Id.* ¶ 37. It remanded for further proceedings on the cross-petitions for letters of administration and instructed that the trial court must first rule on M.'s mother's petition to be appointed guardian of M.'s estate, "as that ruling will impact the preferences set forth in section 9-3 of the Probate Act." *Id.*

¶ 45    In both *Poole* and *Stinnette*, the reviewing court held it improper to grant a petition for letters of administration when the trial court was aware that another person claiming to have higher statutory preference had filed a cross-petition for letters of administration. *Poole*, 207 Ill. 2d at 407; *Stinnette*, 2024 IL App (2d) 230174, ¶ 31. The proper remedy was to vacate the existing order granting letters of administration and remand the case to give the person claiming statutory preference an opportunity to prove that he or she is indeed a member of that group and that no disqualifying statutory or common law factors apply. *Poole*, 207 Ill. 2d at 407; *Stinnette*, 2024 IL App (2d) 230174, ¶ 37.

¶ 46    Consistent with *Poole* and *Stinnette*, we hold that the trial court here misapplied sections 9-1, 9-2, and 9-3, when it granted letters of administration to Ronald, a purported cousin, while the cross-petition of Dianna, a purported sister, was pending. A sister or her nominee falls into category 9-3(f). 755 ILCS 5/9-3(f) (West 2024) ("The brothers and sisters or any person nominated by them.") The legislature has declined to give preference to "whole blood" applicants over "half blood" applicants within a given category. See Pub. Act 85-692 § 1, eff. Sept. 22, 1987 (deleted from the third paragraph, "preferring those of the whole blood or their nominee to those of the half blood or their nominee"). A cousin or his nominee falls into category 9-3(g). 755 ILCS 5/9-3(g) (West 2024) ("The nearest kindred or any person nominated by them"); see also *In re Richter's Estate*, 341 Ill. App. 334, 337 (1950) (citing *Sanders v. Buenger*, 311 Ill. 572, 577-78 (1924) (a first cousin may qualify as a "next of kin" for purposes of seeking letters of administration). Accordingly, a sister, or her nominee, has statutory preference over a cousin to act as or nominate an administrator.

¶ 47    It is evident from the trial court's remarks at the February 18, 2025, hearing that it did not heed the statutory directive to appoint the applicant with the higher statutory preference:

19

"THE COURT: Yes. But at this stage of the game, I don't understand why I would make her an administrator.

She had no contact, nothing to do with them. ***. So I don't understand, you know, why I would appoint her as *** administrator.

MR. KOGUT: *** [S]he [has] preference, she has nominated Mr. Bransfield.

\*\*\*

THE COURT: Just because she has preference doesn't mean that I am obligated to appoint her; is that correct?

MR. KOGUT: Well, there is no basis *** not to[.]

\*\*\*

THE COURT: *** I am going to find at this point, I am not going to appoint an attorney to be the quote *** administrator and add that cost to this estate. ***.

So I am going to deny your motion [to nominate Bransfield as the administrator]."

¶ 48    In granting letters of administration to Ronald over Dianna, the court appeared to reason that, even if Dianna were the sister and Ronald were the cousin, it was not going to grant Dianna's petition for letters of administration because she had come in at a later "stage of the game," she did not have a close personal relationship with the decedents, and it anticipated that her nominee would charge more than Ronald to administer the estate. Preliminarily, we note that Dianna did not file her cross-petition at a late "stage of the game." The trial court had not yet appointed Ronald as administrator when Dianna filed her cross-petition, making Dianna's cross-petition less disruptive to the administration of the estates than either of the cross-petitions in *Poole* or *Stinnette*, where the trial court had already appointed an administrator.

20

¶ 49 Simply put, none of the trial court's concerns were relevant to the administration decision. The court has no discretion to override the statutory preferences set forth in section 9-3 unless the applicant is not qualified under section 9-1 of the Probate Act or is not qualified under common law in that a "patent injustice" or "extreme adversity of interest exists." *Abell's Estate*, 329 Ill. App. at 80; see also *Stinnette*, 2024 IL App (2d) 230174, ¶¶ 35-36 (neither pending felony charges nor the possibility of an unresolvable conflict interest justified overriding the statutory preferences set forth in section 9-3); see also *Cage*, 381 Ill. App. 3d at 113-14 (section 9-1 "broadly" defines eligibility). Here, there was no evidence, or even an allegation, that Dianna was not qualified to act as or nominate an administrator. Accordingly, the court erred in overriding the statutory preferences set forth in section 9-3.

¶ 50 Ronald's arguments do not persuade us otherwise. We reject his argument that the trial court properly appointed him as administrator because Dianna failed to appear at the February hearing. This was not among the trial court's initial stated bases for granting Ronald's petition for letters of administration and denying Dianna's. It was not until Dianna's counsel asked to make a final objection for the record that the trial court interjected, "Your client is not even here." It was not until the hearing on the motion to reconsider, after Dianna again informed the court that it had no discretion to override the statutory preferences, that the trial court appeared to abandon its initial stated bases for denying Dianna's petition and instead focused on her absence at the February hearing: "At the time of the hearing, *** you had ample opportunity to ask for a continuance. I would have [given] it. You decided to proceed."

¶ 51 Even if Dianna's absence at the February hearing had been among the trial court's initial stated bases for granting Ronald's petition and denying her petition, the court's subsequent failure to excuse her absence would have been an abuse of discretion. See, *e.g.*, *Williams v. Dorsey*, 273

Ill. App. 3d 893, 903 (1995) (a denial of a motion to reconsider is generally reviewed for an abuse of discretion). Dianna filed a motion to reconsider within 30 days, explaining that her husband had required emergency heart surgery the day of the hearing, supported by an affidavit. Dianna's counsel's decision not to ask for a continuance at the beginning of the February hearing was reasonable, given that he had no indication that Ronald would be challenging Dianna's status as the decedents' half-sister. To the contrary, Ronald's only prehearing objection to the appointment of Dianna's nominee had been that the nominee was of no relation to the decedents and Ronald had been more involved in the decedents' estates thus far. The February hearing had not been set for the time on the court's docket typically reserved for evidentiary hearings. Instead, it was not until the hearing was underway that Ronald's counsel indicated that Ronald was not certain of Dianna's status as a half-sister, a position counsel reiterated at the hearing on the motion to reconsider. Dianna, in turn, noted that Ronald had not proven *his* status as cousin. These questions *were* set for an evidentiary hearing related to Dianna's section 5-3 requests to amend the declaration of heirship as to Terry and declare heirship in the first instance as to Barry. We now turn to the court's handling of those requests.

¶ 52                    B. Declarations of Heirship: Section 5-3 of the Probate Act

¶ 53          Dianna argues that the trial court misapplied section 5-3 of the Probate Act when, at the February 2025 hearing, it declined to declare heirship consistent with her affidavits. She contends that the trial court had no discretion to set the matter for briefing and, possibly, a hearing, because her affidavits complied with section 5-3(b). 755 ILCS 5-3(b) (West 2024). In her reply brief, she expands her argument to assert that the trial court improperly disregarded "uncontested" affidavits of heirship.

¶ 54 Section 5-3, entitled "Power to ascertain and declare heirship—Evidence," provides in relevant part:

"(a) The court may ascertain and declare the heirship of any decedent to be entered of record in the court *at any time during the administration of the estate* without further notice or, if there is no grant of administration, upon such notice and in such manner as the court directs.

(b) The ascertainment of heirship may be made from (1) *an affidavit of any person stating the facts from which the heirship of the decedent can be ascertained*, which affidavit shall be signed and sworn to or affirmed before any notary public or judge of any court of record in the United States or any of its possessions or territories and certified by the clerk thereof, or before any United States consul, vice-consul, consular agent, secretary of legation or commissioned officer in active service of the United States, within or without the United States, or (2) *from evidence either in narrative form or by questions and answers which are reduced to writing and certified by the court declaring the heirship.* \*\*\* The affidavit or transcript of evidence shall be filed by the clerk of the court declaring the heirship and remain as a part of the files in the cause.

(c) An order of the court declaring heirship is *prima facie* evidence of the heirship, *but any other legal method of proving heirship may be resorted to by any party interested therein in any place or court where the question may arise.*" (Emphases added.) *Id*. §§ 5-3(a), (b), (c) (West 2024).

¶ 55 The plain language of section 5-3 grants the trial court procedural latitude in gathering evidence and, ultimately, declaring heirship. Section 5-3(a) provides that "the court may ascertain and declare the heirship of any decedent to be entered of record in the court at any time during the

23

administration of the estate." *Id*. § 5-3(a) (West 2024). Section 5-3(b) provides that heirship "may" be ascertained by an affidavit or from evidence, but section 5-3(c) clarifies that persons seeking to establish heirship may "resort" to "any other legal method of proving heirship" in "any place or court where the question may arise." *Id*. §§ 5-3(b), (c). Further, a trial court's initial declaration of heirship is only *prima facie* evidence of the heirship that may be overcome in a subsequent proceeding. *Id*. § 5-3(c); see also *In re Conrad's Estate*, 117 Ill. App. 2d 29, 32 (1969). Thus, the trial court was permitted to reconsider its initial declaration of heirship and postpone a challenge to the same pending further briefing and a future hearing.

¶ 56 Our research confirms that the law vests great discretion with the trial court in managing these matters. With limited exceptions not applicable here, the rules of civil procedure apply to proceedings under the Probate Act. 755 ILCS 5/1-6 (West 2024). Under the rules of civil procedure, the trial court may exercise its discretion to continue a matter for the "doing of any act or the taking of any step" prior to rendering a decision. 735 ILCS 5/2-1007 (West 2024). The court's granting of a continuance, managing of its docket, and admission of evidence are reviewed for an abuse of discretion. See *id*. (continuance); *In re Estate of Kazorow*, 2023 IL App (1st) 220938, ¶ 26 (docket); *In re Estate of Michalak*, 404 Ill. App. 3d 75, 90 (2010) (evidence). "Under the abuse-of-discretion standard, a reviewing court does not decide whether it agrees with the [trial] court's decision but, rather, determines whether [the court] acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." (Internal quotation marks omitted.) *Estate of Bass ex rel. Bass v. Katten*, 375 Ill. App. 3d 62, 67 (2007) (appeal from an order granting a stay of proceedings).

¶ 57 Here, the trial court's decision to continue the matter, allow Ronald more time to investigate Dianna's affidavits of heirship, and set the matter for briefing and possible hearing may be considered both a courtroom management decision and a factual determination that Dianna's presentation of her affidavits of heirship at the February 2025 hearing was insufficient to overcome the *prima facie* evidence of heirship set forth in Barry's original affidavit of heirship, as confirmed in the court's initial declaration of heirship, that failed to acknowledge Dianna as a half-sister. A deferential standard of review applies to both aspects of the trial court's decision.

¶ 58 The trial court's decision to continue the matter of heirship was reasonable. In May 2024, the trial court entered an initial declaration of heirship as to Terry's estate that provided that Barry was the only heir—there were no other siblings. At the February 2025 hearing, the public records supporting Dianna's motion to amend the declaration of heirship as to Terry were not before the court. Dianna's counsel had merely e-mailed the supporting documents to Ronald's counsel. While the better practice may have been for Ronald's new counsel, Kontoh Scott, to have informed Dianna's counsel prior to the February 2025 hearing that they wished to investigate her claims of heirship, their failure to do so did not require the trial court to declare heirship in Dianna's favor at that juncture. Ronald's counsel's point that they were surprised by Dianna's failure to appear at the February 2025 hearing is well taken, although her absence is now understood and excused. Further, Ronald's failure to file his own affidavit of heirship is not necessarily dilatory. Rather, it is consistent with his request for more time to investigate Dianna's status as a half-sister in that, if he ultimately *agrees* with Dianna's status as a half-sister, he, as a cousin, would not be an heir. On this point, section 2-1(d) of the Probate Act provides that a cousin will not inherit if there is a surviving sibling or, in our case, half-sibling. 755 ILCS 5/2-1(d) (West 2024) ("If there is no surviving spouse or descendant but a parent, brother, sister or descendant of a brother or sister of

25

the decedent: *the entire estate* to the parents, brothers and sisters of the decedent in equal parts (emphasis added)"). Section 2-1 clarifies that "[i]n no case is there any distinction between kindred of the whole and the half blood." *Id.*

¶ 59    In sum, the question of heirship under section 5-3 is different than the question of administration under section 9-3. See 755 ILCS 5/5-3, 9-3 (West 2024). The former determines who will inherit from the intestate estate; the latter determines who will administer it. *Id.* Here, however, the court's determination on the matter of heirship will "impact the preferences set forth in section 9-3 of the Probate Act." See *Stinnette*, 2024 IL App (2d) 230174, ¶ 37. As such, the trial court should make a determination of heirship, at least as it concerns declaring Dianna the sister and, if necessary, Ronald the cousin, before granting either of their petitions for letters of administration.

¶ 60    Accordingly, we vacate the trial court's order granting letters of administration to Ronald and remand for further proceedings consistent with this disposition.

¶ 61                                III. CONCLUSION

¶ 62    The judgment of the circuit court of Will County is vacated.

¶ 63    Vacated and remanded.